UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

**CIVIL ACTION NO.: 4:07CV-81-M**

**CHERYL STINE**                                                            **PLAINTIFF**

**v.**

**STATE FARM FIRE & CASUALTY COMPANY**                  **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court upon a motion by the defendant, State Farm Fire and Casualty Company ("State Farm"), for summary judgment [DN 57]. Fully briefed, this motion is ripe for decision.

**I. SUMMARY JUDGMENT STANDARD**

In order to grant a motion for summary judgment, the Court must find that the pleadings, together with the depositions, interrogatories and affidavits, establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The moving party bears the initial burden of specifying the basis for its motion and of identifying that portion of the record which demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party is required to do more than simply show there is some "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Co., 475 U.S. 574, 586 (1986). The Rule requires the non-moving party to present "specific facts showing there is a

genuine issue for trial." Fed. R. Civ. P. 56(e). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson, 477 U.S. at 252.

## II.  FACTUAL BACKGROUND

This controversy primarily arises out of a dispute between State Farm and Stine over the proper application of a homeowner's insurance policy. Many of the background facts giving rise to the controversy are undisputed. In June 2005, Stine purchased a home in Providence, Kentucky for $30,000.[1] Shortly after purchasing the home, Stine applied for and was issued a homeowner's insurance policy with State Farm effective July 22, 2005. The policy covered, in part, accidental damage or loss to the dwelling and personal property. In the early morning hours of June 19, 2006, while Stine was not present, her home caught on fire.[2] Although no one was injured, her home and belongings were completely destroyed. Stine immediately notified State Farm of her loss. Upon notification, State Farm began investigating Stine's claim, but ultimately denied the claim and voided Stine's policy. State Farm contends that Stine failed to cooperate in the company's investigation and committed fraud on her application for insurance and in her proof-of-loss documents. Disagreeing with State Farm's assessment of her actions and State Farm's decision to deny her claim, she brought suit against State Farm alleging the company breached the insurance policy and acted in bad faith in denying her claim.

---

[1]  There appears to be no dispute that the replacement value of the home at the time of the fire exceeded the policy limits of $78,000.

[2]  State Farm initially performed an arson investigation due to suspicious circumstances surrounding the fire. Its investigator ultimately found no evidence that the fire was intentionally set.

### III. DISCUSSION

State Farm argues that it is entitled to summary judgment on Stine's contract and tort claims. It contends that Stine's alleged failure to comply with the provisions of the policy prevent her from recovering on the contract. Furthermore, State Farm contends that it had a reasonable basis in law and in fact to deny Stine's insurance claim thereby precluding her tort action.

#### A. BREACH OF CONTRACT CLAIM

This controversy is governed by the terms of an insurance policy which, like any other contract, "should be interpreted according to the parties' mutual understanding at the time they entered into the contract . . . ." Nationwide Mut. Ins. Co. v. Nolan, 10 S.W.3d 129, 131 (Ky. 1999) (citation omitted). If possible, this "mutual intention is to be deduced . . . from the language of the contract alone." Id. at 131-32. Thus, where the words of an insurance policy are clear and unambiguous, they "should be given their plain and ordinary meaning." Id. at 131 (citation omitted). Here, the policy in question generally provides that State Farm is to pay the insured the cost to repair or replace any property, including the dwelling, that is damaged or destroyed by an accidental fire. An insurer's duty to pay for the loss, however, is not absolute, but is instead conditioned upon compliance by the insured with her own duties under the policy. See, e.g., Am. Cont'l Ins. Co. v. Wiser, 712 S.W.2d 345, 346 (Ky. Ct. App. 1986) ("In an action on an insurance policy, the insured must prove compliance with the policy's conditions precedent or a waiver thereof to recover under its terms.") (citation omitted). Stine's policy, for example, provides that "[n]o action shall be brought [against State Farm] unless there has been compliance with the policy provisions." (Policy at 14, ¶ 6.)

Kentucky recognizes the doctrine of substantial compliance with regard to duties under

insurance contracts. Lewis v. State Farm Fire & Cas. Co., 238 F.3d 422 (table), 2000 WL 1828711, at *3 (6th Cir. 2000) (citing Westchester Fire Ins. Co. v. Gray, 240 S.W.2d 825, 827 (Ky. 1951)). Under this doctrine, an insured need only comply with the "essential requirements" of the policy rather than strictly complying with her duties. Charter Oak Fire Ins. Co. v. Coleman, 273 F. Supp. 2d 903, 908 (W.D. Ky. 2003) (citation omitted). To determine the essential requirements of the policy, the Court must look to the purpose of the duties imposed upon the insured. 13 Couch on Insurance § 186:36 (3d ed.) ("Substantial compliance is generally measured by whether the insurer has supplied sufficient information to satisfy the purpose of the requirements . . . ."). The "entire purpose of the proof of loss requirement" is "to enable the insurer to investigate the asserted losses, to determine with reasonable accuracy its own rights, responsibilities and potential liability, and to prevent the assertion of fraudulent claims." 16 Richard A. Lord, Williston on Contracts § 49:110 (4th ed.); see also Charter Oak, 273 F. Supp. 2d at 909. Therefore, an insured complies with her duties under the substantial compliance doctrine if the information she provides "is sufficient to enable the insurer to . . . make this assessment[.]" Id. Alternatively, an insured has substantially complied with her duties under an insurance policy if "the insured has complied to the extent to which compliance is possible, in circumstances such as where proofs and documentation not supplied have been destroyed or otherwise made unavailable by reasons beyond the power of the insured." 13 Couch on Insurance § 186:36.

State Farm argues that Stine did not substantially comply with several of her duties under the insurance policy. The policy provides that, after a loss, the insured is to do the following:

- "prepare an inventory of damaged or stolen personal property. Show in detail the quantity, description, age, replacement cost and amount of loss. Attach to the inventory all bills, receipts and related documents that substantiate the figures in the inventory" (Policy at 13, ¶ 2(c).)

- "as often as we reasonably require . . . (1) exhibit the damaged property; [and] (2) provide us with records and documents we request and permit us to make copies . . . ." (Id. ¶ 2(d).)

- "submit to us, within 60 days after the loss, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief: . . . (6) an inventory of damaged or stolen property . . . ." (Id. ¶ 2(e).)

To support its position that Stine did not comply with these provisions of the policy, State Farm contends that Stine failed to provide any documentary support to substantiate her ownership of items she listed on a 21 page, 288 item inventory submitted as part of her proof of loss. It is undisputed, as State Farm suggests, that Stine failed to turn over documentation to prove ownership of most of the items lost in the fire.[3] But that is not to say that Stine did nothing in an attempt to comply with State Farm's requests or that State Farm was unable to verify her ownership of the property in other ways. For instance, it appears that Stine did produce some receipts for certain items she purchased, including items she claims were used to renovate her home. (Stine Dep. 48:21-49:5, 106-109.) State Farm also verified Stine's ownership of some items through its own investigation, either via pictures taken at the scene of the fire, or via receipts obtained by Debra Massie directly from vendors.[4] According to State Farm, it also gave Stine the opportunity to prove ownership of the property in question by turning over bank and credit card statements, which Stine

---

[3] Stine testified that most of her receipts were destroyed by the fire. (Stine Dep. 47:19-22.) Debra Massie, an investigator for State Farm, acknowledged that many times after a total loss an insured is unable to find all of her receipts. (Massie Dep. 105:24-106:6.) She also testified that State Farm has paid out on claims where the insured was unable to produce copies of receipts. (Id. 106:10-13.)

[4] Citing to her expert, Stine argues that State Farm could have verified ownership of other items on the list if it had done a sift of the debris soon after the fire. But as the plaintiff's expert acknowledged, an insurance company cannot conduct such a sift until it knows what it is looking for, which is generally determined through the insured's proof-of-loss statement. (Smith Dep. 59:8-14.) But the plaintiff did not submit her proof-of-loss statements until after the site had been "cleared."

5

never did. Stine disagrees and argues that she turned over everything requested by State Farm that she could get her hands on. (Id. 114:12-19.)

State Farm also argues that Stine failed to substantially comply with her duties under the contract by "clearing" the scene of the fire with bulldozers before State Farm had an opportunity to perform a sift of the debris. By sifting the debris, State Farm contends that it would have been able to verify certain items that were present in Stine's house at the time of the fire. Stine does not deny that she used tractors to move the fire debris to a different location on her property. However, she contends that she did so only after being assured that State Farm had conducted all of its inspections and only after four months had passed from the time of the fire. (Id. 81:18-20.) Furthermore, Stine testified that she left all of the debris at the scene of the fire. (Id. 83:19-21.) Although it is undisputed that most of Stine's property was taken from the debris, Stine denies that she took any of the property, and both parties acknowledge that it very well could have been vandals that took the items.

Despite these shortcomings in Stine's compliance with her duties under the policy, State Farm acknowledges that she was otherwise cooperative. (Massie Dep. 107:5-13.) She signed a form authorizing State Farm to obtain information pertaining to her personal and financial history, she provided State Farm with a three hour recorded statement, she submitted to an examination under oath, and she allowed State Farm to have unfettered access to the scene of the fire. Under these circumstances, the issue of substantial compliance is better left to the jury who can assess whether Stine did, in fact, do everything she could to comply with her duties under the policy.[5]

---

[5] At trial, the burden of proving substantial compliance is on the plaintiff. Wiser, 712 S.W.2d at 346 ("the insured must prove compliance . . . ."). However, assuming the plaintiff meets her burden, State Farm could still defeat recovery by establishing fraud on the application or in the proof-of-loss statement.

See 13 Couch on Insurance § 186:36.  There being a genuine issue of material fact, summary judgment is not appropriate as to Stine's breach of contract claim.

### B. BAD FAITH CLAIM

In order to state a claim for bad faith under Kentucky law, the insured must prove three elements: "(1) the insurer must be obligated to pay the claim under the terms of the policy; (2) the insurer must lack a reasonable basis in law or fact for denying the claim; and (3) it must be shown that the insurer either knew there was no reasonable basis for denying the claim or acted with reckless disregard for whether such a basis existed." Fed. Kemper Ins. Co. v. Hornback, 711 S.W.2d 844, 847 (Ky. 1986) (Leibson, J., dissenting) (adopted by incorporation in Curry v. Fireman's Fund Ins. Co., 784 S.W.2d 176, 178 (Ky. 1989)).  Thus, "[a]n insurer is entitled to challenge a claim and litigate it if the claim is debatable on the law or the facts." Wittmer v. Jones, 864 S.W.2d 885, 890 (Ky. 1993) (quotation and internal markings omitted).  The Court agrees with State Farm that it had a reasonable basis in law or fact for denying the claim.  Stine acknowledges that she did not strictly comply with her duties under the contract.  And if she did not do everything she could do to comply with her duties, then State Farm had the right to deny her claim.  Simply put, it is fairly debatable whether Stine substantially complied with her duties under the contract, thereby precluding her claim for bad faith.[6]  Summary judgment is appropriate.

---

[6] Stine suggests that State Farm's motion for summary judgment as to bad faith is premature as discovery on that issue is not complete.  But nothing that the plaintiff could establish in discovery will change the fact that State Farm had a reasonable basis in law or fact to deny her claim.

## IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that the motion by the defendant, State Farm Fire and Casualty Company, for summary judgment [DN 57] is **GRANTED in part** and **DENIED in part**. It is granted as to the plaintiff's bad faith claims and denied in all other respects.

cc:     Counsel of Record